**Ben H. FRANK, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 4960.**

United States Court of Appeals, Tenth Circuit.

March 16, 1955.

Rehearing Denied April 29, 1955.

John B. Ogden, Oklahoma City, Okl., for appellant.

Paul W. Cress, U. S. Atty., Oklahoma City, Okl., and William H. Timbers, General Counsel, Securities and Exchange Commission, Washington, D. C. (H. Dale Cook, Asst. U. S. Atty., Guthrie, Okl., Elizabeth B. A. Rogers, Washington, D. C., and Leo Fred Wyrick, Attys., Securities and Exchange Commission, Fort Worth, Tex., on the brief), for appellee.

Before MURRAH and PICKETT, Circuit Judges, and SAVAGE, District Judge.

SAVAGE, District Judge.

The Appellant, Ben H. Frank, appeals from a conviction on the first five counts of an eleven count indictment which charges using the mails in a scheme to defraud in the sale of securities in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a). Counts 6 to 11 inclusive, which charged Frank with using the mail for the purpose of executing a scheme to defraud in violation of the mail fraud statute, 18 U.S.C. § 1341, were dismissed, one by the government for lack of evidence and the others by the court on the ground that the mailing of the letter alleged in each count occurred after the investment had been made.

Frank was found guilty by a jury verdict of having, from about November 1, 1949, to about January 14, 1952, made use of the mails in carrying out a scheme to defraud by making false and fraudulent representations and by failing to state material facts in the procurement of funds by sale of securities for the drilling of oil wells. Continuously since 1939, Frank has been engaged in the promotion of oil drilling ventures financed by funds obtained from investors. His efforts to complete a commercial producing oil well have not met with success. The funds obtained from investors for the purpose of drilling wells have been his only source of income.

In soliciting investments, he has exploited an alleged oil finding device which he calls a "magnetic logger", but which in common parlance is referred to as a "doodle bug".

In 1946 or 1947, he used funds obtained from investors other than those named in the indictment to commence the drilling of a well known as Evans No. 1 on a 160 acre tract of land in Muskogee County which one of his controlled companies had acquired.

His conviction is based upon his scheme to solicit loans to complete the drilling of the Evans No. 1 well and to be used in the drilling of additional wells principally upon the 160 acre tract which Frank represented to be proven acreage. During the period involved investors were solicited directly and through newspaper advertisements and induced to invest in the project by reliance upon many alleged misrepresentations. The investor received on each $150 invested a ten-year note for that amount upon representation that the loan would be repaid even if the oil venture was unsuccessful. In addition, the investor received a contract which provided for an option to purchase for $1.00 a 3/40ths of a 1/16th working interest in the tract.

The investors were solicited from time to time to make further investments. Three letters from Frank to O'Connor were made the basis for Counts 1, 2 and 5 of the indictment. After receipt of each of these letters, dated respectively April 16, May 2 and May 28, 1951, O'Connor was solicited and induced to make separate investments. He received another letter dated January 14, 1952, but did not make another investment. The basis of Counts 3 and 4 are letters from Frank to Dennis who made separate investments after the receipt of such letters.

The first two misrepresentations alleged in the indictment pertained to the magnetic logger. The proof that such representations were made is found in the prospectus which Frank admitted using both by mailing and by way of demonstrations in making sales. In this prospectus prepared by Frank, it is stated:

> "After ten years of work, and thousands and tens of thousands of experiments, Ben H. Frank has perfected what he calls a Magnetic Logger. A machine or device by means of which he can locate an oil pool, tell approximately the depth of the producing saturated Oil Sands to within 25 to 150 feet, and roughly gauge the size of the well when fully and properly completed, all before the well is drilled or even started.
>
> "While perfecting this device, Ben H. Frank made over 100 sworn reports on wells before they were drilled. About 94 out of 100 of these reports were approximately correct. On the tenth year, Ben H. Frank made the last discovery which made this practically 100% sure. He spent over ten years and over $100,000 in experimentation to get it. While mistakes can still occur, due to the human factor, in this machine or any other; as for instance when the operator of a typewriter or adding machine hits the wrong key, mistakes must occur; yet if used carefully and properly, the results being as scientific and sure as the Laws of Nature and Physics, should always be correct and accurate."

It is also alleged in the indictment that Frank falsely represented that the Evans No. 1 well had encountered oil sands at the approximate depths of 420, 860 and 1040 feet; that eight oil saturated sands were located at various depths and that 32,640,000 barrels of oil could be recovered from the 160-acre tract. It is further charged in the indictment that Frank falsely stated that a $300 investment would return a profit of approximately $200,000. These representations are likewise established by statements appearing in the prospectus. Other misrepresentations are alleged in the indictment which need not be detailed.

In addition, material omissions are charged in the indictment based on Frank's alleged failure to state that at least five dry holes had been drilled on locations where the magnetic logger had forecast production; that 23 dry wells had been drilled within an eight-mile radius of the tract and that most of the sands which Frank represented to be underlying his Muskogee County leases had been encountered in the drilling of such dry holes.

There was no controversy of consequence with respect to material representations alleged to have been made by Frank. Conceding in the main that representations were made by him as charged and proved by the government, he bases his defense upon the twofold premise that such representations were true or, at least, were made in good faith and believed by him to be true.

Frank does not contend that the evidence is insufficient to support the conviction, but he seeks reversal because of alleged errors committed by the trial court in the admission and exclusion of evidence, and in the instructions to the jury, and because of alleged prejudicial conduct of the presiding judge during the trial.

The wholesale attack made on the evidentiary rulings of the court may be adequately disposed of by discussing togeth-

er objections of a similar nature. Some objections are so patently frivolous that they will not be noticed.

The testimony of certain investor witnesses is said to be incompetent and prejudicial because it pertained to mailings after investments had been made. These objections relate to an identical letter dated January 14, 1952, received by numerous investors. Frank claimed that the court should have directed the jury not to consider the testimony of witnesses who received this letter, the mailing of which was the basis for the dismissed mail fraud counts. His argument is based upon the assumption that this letter and the testimony of investor witnesses in connection therewith became inadmissible for all purposes when it developed that the mailings of that letter were insufficient to establish violations of the Mail Fraud Statute. No authorities are cited which support this contention. This testimony was competent wholly aside from its sufficiency as a basis for the mail fraud counts because it tended to prove the continuing scheme to defraud charged in the indictment. It was a form letter sent to investors giving a glowing report on the progress being made in the very promotion which is the subject matter of the indictment. In addition, it contains a solicitation of additional investments.

This contention overlooks the fact that the offenses charged are the result of a single continuing scheme to defraud. The scheme becomes a crime when the mails are used in furtherance thereof. Harper v. United States, 8 Cir., 143 F.2d 795. Since it is the use of the mails in furtherance of the fraudulent scheme that is prohibited rather than fraud upon any recipient of material sent through the mails, the testimony of a victim is admissible to prove the scheme to defraud even if there has been no use of the mails in defrauding that party. United States v. Young, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548; McNear v. United States, 10 Cir., 60 F.2d 861; Blue v. United States, 6 Cir., 138 F.2d 351.

Frank next contends that the court erred in admitting the testimony of Witt, who testified that a dry hole was drilled in 1939, and the testimony of Nassaman, who testified that a dry hole was drilled in 1946, although Frank had predicted in both instances, after testing with his magnetic logger, that oil would be found. One of the misrepresentations charged in the indictment related to the purported infallibility of the magnetic logger. This evidence was clearly admissible because of its bearing upon the question of whether Frank knowingly made false statements with respect to the reliability of his magnetic logger as an oil finding device.

It is next argued that the court committed error in permitting the witness White, who qualified as a geologist, to express an opinion as to the oil production which might be obtained from the 160-acre tract. The short answer to this contention is that Rule 28 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., expressly authorizes the use of expert witnesses in the trial of criminal cases.

We come now to a consideration of the contention that the court erred in refusing to permit Frank to show that he was in good faith in making representations as to the reliability of his magnetic logger by excluding his proffered testimony as to what other parties had told him in regard to the production obtained from wells upon which he tested the device. An offer was made to prove by Frank, if permitted to testify, that he made 60 tests of the device and he was subsequently told by parties familiar with the results obtained in the drilling of such wells that his predictions were accurate in every instance. This evidence was offered upon the theory that it tended to show that Frank was in good faith in making representations respecting reliability of the device. The trial court rejected the proffered testimony as hearsay.

The statements said to have been made to Frank by third parties were not offered to prove that such state-

ments were true but as tending to show that Frank was led thereby to believe that the magnetic logger could be relied upon. Evidence of this character is not objectionable as hearsay. The general rule is stated in Wigmore on Evidence, 3d Ed., Sec. 1789, as follows:

> "Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned. * * *"

In Buchanan v. United States, 2 Cir., 233 F. 257, 259, the court says:

> "* * * In the case at bar the statements of third persons to the accused, which were excluded, were not offered as evidence of their truth, but as tending to show the state of mind they produced, and therefore they were not within the rule against hearsay evidence. It was immaterial whether the statements were true or false; the fact that they were made was material. * * *"

The rule is aptly stated in headnote 2 of Miller v. United States, 10 Cir., 120 F.2d 968, as follows:

> "Where the belief of a person charged with fraud or the motive of his act or conduct is material, he may not only directly testify that he had no intent to defraud, but he may buttress that statement with testimony of relevant circumstances, including conversations had with third persons or statements made by them, tending to support his statement that he had no intent to defraud."

The Miller case is cited with approval and followed by this court in Haigler v. United States, 10 Cir., 172 F.2d 986, 988. We must conclude, as was said by the court in the Haigler case, that "Unconvincing as it may be, this testimony was plainly admissible as bearing upon the essential element of intent to commit the offense charged, and we think it was error to exclude it."

The assertion that the trial judge took an unwarranted interest in certain evidence offered by the government and propounded questions which tended to bias and prejudice the jury against the defendant is without any substance.

Exceptions were taken to a number of the instructions given by the court, but only three are complained of here. Instruction No. 6 given by the court was:

> "No amount of honest belief on the part of the defendant that the enterprise promoted by him will ultimately make profits for investors in such enterprise will excuse false representations made to obtain money for the enterprise."

This was a proper instruction and is almost the precise statement of the rule to be found in Foshay v. United States, 8 Cir., 68 F.2d 205, 210.

The next instruction complained of is No. 14. Immediately after this instruction was given a colloquy ensued between counsel and the court, as a result of which it was agreed that the instruction might be withdrawn. The record does not reflect that the court ever advised the jury to disregard the instruction. However, counsel did not request that the jury be told to disregard the instruction and made no objection to the failure of the court to do so. Under these circumstances, error may not be predicated upon what was an apparent oversight on the part of both counsel and the court.

And, finally, Frank complains of Instruction No. 16 which follows:

> "It is contended by the defendant vigorously that he believed the statements he made and that there was no intention upon his part to commit a fraud. However, you are instructed that if the statements made by the defendant were false and there was no basis for such statements except the hope and be-

lief of the defendant that he could produce the oil, and that he made the statements in good faith, that contention would be no defense, because if the statements within themselves were false or based purely upon speculation and caused the investors to rely upon the statements as true, the defendant's acts would constitute an offense regardless of his good faith."

While the meaning of this instruction is not entirely clear, we are forced to conclude that it, in effect, declares that, if the jury should find that false statements were made which were relied upon by investors, an offense was committed even if such statements were made in good faith.

This was an erroneous instruction. The court did tell the jury in some three or four other instructions that they must find that any false statements made by the defendant must have been known by him to be false and that they must find that he intended to defraud in order to return a verdict of guilty. The question then arises whether the numerous statements in the instructions to the effect that the good faith of the defendant would be a defense can overcome the contrary statement made in Instruction No. 16 that good faith would not be a defense. We agree with the following statement made by Judge Miller in McFarland v. United States, 85 U.S.App.D.C. 19, 174 F.2d 538, 539:

> "If a charge to a jury, considered in its entirety, correctly states the law, the incorrectness of one paragraph or one phrase standing alone ordinarily does not constitute reversible error; but it is otherwise if two instructions are in direct conflict and one is clearly prejudicial, for the jury might have followed the erroneous instruction. Nicola v. United States, 3 Cir., 1934, 72 F.2d 780, 787; Drossos v. United States, 8 Cir., 1924, 2 F.2d 538, 539."

The giving of this erroneous instruction, standing alone, might not be so prejudicial as to require reversal in view of the overwhelming evidence of guilt. But we have reluctantly concluded that this improper instruction, together with the error of the court in rejecting material evidence bearing on the crucial issue of good faith, compels a reversal of the case for a new trial.

Reversed.