**Darrell H. HOFMANN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 7921.**

United States Court of Appeals
Tenth Circuit.

Nov. 22, 1965.

Rehearing Denied Dec. 23, 1965.

James W. Heyer, Denver, Colo., for appellant.

Donald P. MacDonald, Asst. U. S. Atty., Denver, Colo. (Lawrence M. Henry, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an appeal from a conviction by a jury on nine counts of mail fraud under 18 U.S.C. § 1341. The charge was based on acts of the defendant and two others (also indicted, but tried separately) in a promotion of a land subdivision in Saguache County, Colorado, called

"Sunset Valley." This promotion of Sunset Valley included the setting up of booths at sports shows and fairs in several of the western states. A sign stating "Win a lot in Colorado" was prominently displayed at these booths, as was a backdrop of mountain scenery. The visitors who completed an "entry blank" at one of the fairs and deposited it in the box provided at the booth were subsequently notified that they were "lot winners," and that on the payment of $39.50 "handling fees," they would receive a deed to a lot in the Sunset Valley subdivision.

Accompanying the notification to the "winners" were various printed materials which made representations in regard to the condition of the lots and the desirability of the area. These had to do with the close proximity to mountains, recreation areas, and hunting and fishing. One of the items enclosed was a "fact sheet" stating that lot winners would receive a deed describing the parcel by lot and block number, that a plat of Sunset Valley subdivision was filed of record in the Saguache County courthouse, that the real estate taxes were paid, and that sources of supply of water were plentiful.

The notification to the lot "winners," signed by "B. Hofmann," and information sheets were mailed from Wichita, Kansas. Further inquiry was invited, and was to be addressed to B. Hofmann in care of a Denver, Colorado, address. Several inquiries were received, and the indictment charged a mail fraud violation on each of eleven replies allegedly mailed by the defendant from Denver, Colorado. It was alleged in the indictment that each of those who received a "count letter" in reply to their inquiry about the property subsequently accepted the offer and remitted $39.50. None of these people received a deed or a refund of their money.

The evidence revealed that on December 6, 1961, the defendant Hofmann had entered into a contract to purchase land from Mrs. Virginia C. Anderson. The land consisted of 160 acres of unimproved land in Saguache County. At the time of this contract, Mrs. Anderson was in turn purchasing the land under contract from its record title holders. This was to be "Sunset Valley."

Mrs. Anderson subsequently cancelled the land purchase contract by reason of defendant's default in making his payments, although apparently she accepted some payments thereafter. During the period of his contract with Mrs. Anderson, defendant made three unsuccessful attempts to have a plat of the property accepted by the County Commission of Saguache County. Each of the proposed plats was turned down for failure to comply with subdivision standards adopted by the County Commission. Thus it appears that at no time did the defendant or Bonded Land Development Co., Inc. (a corporation he had organized) acquire ownership of the Anderson land, and at no time was a plat of a subdivision of that tract recorded in the records of Saguache County.

The defendant sought other land for Sunset Valley, and on June 25, 1962, was assigned an option to purchase other land in Saguache County. Some count letters are before this date and some after. The option was assigned to him by Glen W. Phelps who had received it from a Mr. Morris. The court sustained several objections to the admission of evidence concerning this land, the Phelps tract, and to the defendant's transactions in regard to it. The exclusion of this evidence forms the basis for the first point on appeal.

It was defendant's attorney's position that the excluded evidence was material to the issue of the defendant's good faith. Concerning this issue, the defendant's attorney offered to prove the following: (a) That Phelps had bought an option to purchase the tract from Mr. Morris; (b) that Phelps was in the process of subdividing the land and had obtained a preliminary plat; (c) that Hofmann intended to substitute this subdivision for the original Sunset Valley Estates, and to convey lots from it to the various lot winners; (d) that Hofmann was advised

by his attorney that the title to the land was secure, and that on its acquisition he should convey lots in compliance with his offers.

The introduction of much of the proffered evidence was resisted by counsel for the Government who objected, in the main, on the grounds of materiality. However, the defendant was able to get in some oral testimony concerning the transaction, as well as a copy of the assignment agreement from Phelps. The option agreement between Phelps and Morris and the original assignment to Hofmann were objected to on the ground of relevancy and materiality. To these objections the court ruled that " * * * the objection will be sustained at this time with the right to renew them if and when the Court learns from the evidence what the ultimate disposition of the property was." Later, the two exhibits were re-offered and the court again sustained an objection on the ground of materiality.

■ Fraudulent intent is unquestionably an essential element of a crime such as the one charged here, and evidence of the defendant's good faith is thus material to his defense. Beck v. United States, 305 F.2d 595 (10th Cir.), cert. den. 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123; Deschenes v. United States, 224 F.2d 688 (10th Cir.); Frank v. United States, 220 F.2d 559 (10th Cir.); Rice v. United States, 149 F.2d 601 (10th Cir.); Troutman v. United States, 100 F.2d 628 (10th Cir.). The record shows that the court did not deny that the defense of good faith was material to the action. In fact, the court stated that " * * * you [the defendant] can show good faith if you have any to show on proper evidence * * *." The record amply illustrates however that the court correctly found the particular evidence offered on this issue to be objectionable, and took the position that for reasons of both competency and materiality, the evidence did not qualify for admission. The oral testimony of Mr. Phelps was unfit for the purpose of establishing that the title to the land was in Mr. Morris. The trial court made its position and the defect entirely clear to defendant's attorney. The court said:

"There isn't one scintilla of evidence in this record that Morris had any legal, equitable or other interest in this parcel of real estate at the time he gave the option.

"So far, the only evidence about title * * * is hearsay by Phelps about what the attorney told him about the title and so forth. No abstract. No County Clerk or Recorder.

"What I am telling you is you start from no where. You start with Phelps. Now, to have a chain of title down to Phelps, it has got to come from the Government or Spain, if it is part of the Spanish Grant.

"It has got to come from some source. We just don't start on title up on a nebulous area. We start on title from a sovereign, * * *."

■ The question of materiality evolves from this fundamental lack in the proof. Since title was never shown to have been in Mr. Morris when he gave the option, it was never established that the defendant could have acquired a salable interest in the land through the existence of his assigned option. Thus, it was not shown that the negotiation and transaction participated in by the defendant could have put him in a position to honor his commitments. Without the possibility of such a result, the matter of the negotiations is immaterial to the issue of the defendant's good faith. It was within the province of the trial court to make a preliminary determination of fact, in this instance the state of the title, in order to rule on the admissibility of the evidence. Gila Valley, G. & N. Ry. Co. v. Hall, 232 U.S. 94, 34 S.Ct. 229, 58 L.Ed. 521; Roberson v. United States, 165 F.2d 752 (6th Cir.). Here, proper evidence of title was not offered, despite ample opportunity to do so, thus the exclusion of the evidence concerning the subsequent land transaction did not result in reversible error.

The defendant's second point on appeal is that the court erred in excluding evidence of the involvement of the other separately tried defendants, Eaton and Peacock, in land schemes of a similar nature in the same geographical area.

Presumably the defendant intended to show that by the complicity of the two other men in prior land schemes with almost identical promotion, the fraudulent scheme had been devised prior to the defendant's involvement in Sunset Valley and therefore the defendant could not have had a part in the evolution of the scheme. The point is without merit and defendant cites no supporting authorities. It is true that some cases define an essential element of the crime of mail fraud under 18 U.S.C. § 1341 as the "devising of a scheme to defraud," Gusow v. United States, 347 F.2d 755 (10th Cir.); Crosby v. United States, 183 F.2d 373 (10th Cir.); United States v. Crummer, 151 F.2d 958 (10th Cir.); while others speak merely of the "existence of a scheme to defraud." Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; Beck v. United States, 305 F.2d 595 (10th Cir.), cert. den. 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123; Palmer v. United States, 229 F.2d 861 (10th Cir.), cert. den. 350 U.S. 996, 76 S.Ct. 546, 100 L.Ed. 861, rehearing den. 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480. This is merely a difference of terminology and not of substance. The essential matter of proof in the Government's case is the knowing participation by the defendant in a scheme to defraud in which the mails were used. That the same scheme had been previously used by two others charged would in any event be immaterial on the issue of whether or not a scheme was devised or existed in the present case. The significant fact is the application here of a fraudulent scheme to a new set of circumstances to which the defendant was a party. The position that the idea for the fraudulent scheme must have originated in the mind of the defendant is without merit. Certainly there are few "new" schemes as the ingenuity of man has developed most of the basic ones, and the present day effort seems to be limited to devising variations on the old ones. The trial court properly excluded evidence of the prior participation of Eaton and Peacock in similar schemes.

Thus, the exclusion of the evidence on both of the issues cited was proper, and the defendant's conviction is affirmed.