**Arthur Rue STEIGER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Marie Nola STEIGER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Donald ROMONTIO, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 8804–8806.**

United States Court of Appeals Tenth Circuit.

Feb. 3, 1967.

Melvin J. Spencer, Oklahoma City, Okl., for appellants Steiger.

John B. Ogden, Oklahoma City, Okl., for appellant Romontio.

John W. Raley, Jr., Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., was on the brief), for appellee.

Before MURRAH, Chief Judge, PHILLIPS, Circuit Judge, and CHILSON, District Judge.

ORIE L. PHILLIPS, Circuit Judge.

An indictment containing 13 counts was returned against Arthur Rue Steiger, Marie Nola Steiger, and Donald Romontio,[1] doing business as Superior Products, Inc. They were convicted and sentenced on Counts 1, 2, 3, 4, 6, 7, 8, 9, 10, 11 and 12, each of which charged a violation of 18 U.S.C.A. § 1341, the Mail Fraud Act, and on Count 13, defined in 18 U.S.C.A. § 371, which charged a conspiracy to violate 18 U.S.C.A. § 1341. Each of Counts 1 to 4, inclusive, and 6 to 12, inclusive, charged that the defendants devised a scheme and artifice to defraud for obtaining money and property by means of false and fraudulent pretenses, representations and premises. Each of such numbered counts further alleged that the scheme so devised was substantially as follows:

That to induce persons named in the indictment and other persons to the grand jury unknown to purchase household appliances at prices approximately twice the price at which they could be purchased at other retail "outlets," and to induce such named and unnamed persons to execute retail installment contracts and promissory notes for the purchase price of such appliances, they would represent to each of such named and unnamed persons that he would be participating in an advertising promotion, and that by supplying Superior Products, Inc., with a list of names of persons who might be interested in enrolling in such advertising promotion, he would receive from Superior Products, Inc., for each of such persons whose names he supplied, who purchased one of such appliances, $17.50, and for each of them who purchased two of such appliances, $35, and for each of them interviewed, but who did not make a purchase, $5; and that he would also receive for each of the persons whose names were furnished in turn to Superior Products, Inc., by a purchaser whose name he had furnished to it, who purchased a single appliance, $17.50, and two appliances, $35, and thereby he would receive back what he paid for an appliance or appliances and also additional moneys over a three-year period;

That the defendants would cause to be mailed to prospective purchasers introductory letters signed by prior purchasers, informing the prospective purchasers of a "fabulous profit-sharing program" through an advertising and promotion plan, which would be explained to each of the prospective purchasers by a friend, pursuant to an appointment arranged for that purpose, in order to obtain the consent of such prospective purchasers to be interviewed by the defendants or their authorized sales representatives; and

That the defendants would secure salesmen and train them to present a sales "pitch," which pitch would contain false statements, half truths, and innuendoes, designed to mislead.

Each of such numbered counts further alleged: That the defendants, by means of sales literature, oral representations, and letters, represented to prospective purchasers, well knowing that said representations were false and fraudulent:

"(1) That the sales representative of Superior Products, Inc. was not a salesman but was in the advertising business;

"(2) That Superior Products, Inc. was a multimillion dollar corporation that had been in business 10 years;

1. The individuals will be referred to hereinafter as the defendants.

"(3) That the household appliances were available only through the referral program and could not be purchased in any store;

"(4) That Superior Products, Inc. was not interested in 'taking peoples' money,' but in 'creating extra income for people';

"(5) That a substantial percentage of those names submitted would ultimately become purchasers;

"(6) That because of the operation of the referral plan described herein the cost of the appliance purchased would be recouped through referral commissions paid by Superior Products, Inc., and further, that the purchasers would receive additional income over a three year period."

Count 1 further charged that for the purpose of executing such scheme the defendants caused to be delivered according to the directions thereon by the Postal Establishment of the United States a letter addressed to Mr. and Mrs. C. Cherry, 1601 North East 24th St., City.

Counts 2 to 4, inclusive, and 7 to 12, inclusive, each charged a separate and distinct use of the mails for the purpose of executing such scheme.

Each of the defendants contends that the evidence was insufficient to sustain the conviction and that the trial court erred in overruling their respective motions for a directed verdict of not guilty.

■ In passing on the sufficiency of the evidence to support a verdict of guilty in a criminal case, an appellate court will not weigh conflicting evidence nor consider the credibility of witnesses, and an appellate court must view the evidence in a light most favorable to the Government and determine the question of law as to whether there is substantial evi-

dence, either direct or circumstantial, which, together with the reasonable inferences that may be drawn therefrom, sustains the verdict.[2]

■ Since, for failure to give an instruction on good faith, requested by each defendant, we reverse the judgment as to each defendant and remand the case for a new trial, we think it unnecessary to review the evidence in detail and it is sufficient to say that after an examination of the evidence, considering it in the light most favorable to the Government, we are of the opinion that there was substantial evidence to support each of the verdicts of guilty.

Each defendant interposed the defense of "good faith." There was evidence from which the jury could have found that each defendant in good faith believed that the referral plan was practical and would succeed, however visionary in retrospect it may seem to be, and that the promises given would be kept and the representations made would be fulfilled.

The Steigers, who owned the business enterprise, manifested their belief in the practicality of the plan by largely exhausting their financial resources in an effort to make the plan succeed and ended up heavily in debt.

■ Good faith is a complete defense to a charge of using the mails to defraud in violation of § 1341, supra, and a defendant is entitled to proper instructions on the theory of his defense, if, as here, there is evidence to support such theory.[3]

The Steigers requested the court to give the following instructions:

"If you believe that defendants, Arthur Rue Steiger, Marie N. Steiger * * * honestly and in good faith believed in the referral plan and in good faith intended to perform the referral plan as it was presented to the purchasers, then you must acquit these

2. Williams v. United States (decided 11/14/66), 10 Cir., 368 F.2d 972.

3. Beck v. United States, 10 Cir., 305 F.2d 595, 599; See also Hofmann v. United States, 10 Cir., 353 F.2d 188, 190.

defendants and each of them on all Counts of the Indictment.

\*   \*   \*   \*   \*   \*

"You are further instructed that even though you may find that the referral plan was impracticable, if it was devised in good faith, and these defendants intended in good faith to perform it, then you must acquit defendants Arthur Rue Steiger, Marie N. Steiger \* \* \*."

Romontio requested the court to give in his behalf the same instructions, except they were modified to refer only to him.

The court did give general instructions on wilfulness, unlawful intent, specific intent, untruth of a representation, fraudulent statement, and acting on advice of counsel, but none of the instructions given fairly, clearly and fully submitted the defense of good faith interposed by each defendant.

The fact that the scheme, viewed in retrospect, would be regarded as impractical and visionary by reasonable persons of ordinary judgment and prudence does not defeat a defense of good faith, if the defendant asserting such defense actually believed that the plan was practical and would succeed. Some defendants are visionary and impractical. Indeed, some individuals, although endowed in many respect with extraordinary intellectual faculties, are visionary.[4]

Accordingly, we conclude the refusal to give such requested instructions was error, requiring us to reverse each of the several judgments and remand the case, with instructions to grant each of the defendants a new trial.

It is so ordered.

4. This court, in Hawley v. United States, 10 Cir., 133 F.2d 966, 972, approved as a correct statement of the theory of good faith, interposed as a defense in a mail fraud case, the following instruction:

"It matters not how visionary you may find the enterprise to be, or how unreasonable the prospects of success \* \* \* if the defendants actually believed in them. Promises made in good faith,

whether they be glittering or attractive or not, are not criminal. If, therefore, you believe \* \* \* that the representations made by the defendants, \* \* \* although glittering, attractive, persuasive and alluring, were made in good faith, and not as a part of a deliberate plan or scheme to defraud or to obtain money by false pretenses, then it is your duty to find the defendant not guilty \* \* \*."