**Marilou McCARTHY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9984.**

United States Court of Appeals
Tenth Circuit.

Sept. 10, 1968.

Marshall Quiat, Denver, Colo., for appellant.

Donald E. Cordova, Asst. U. S. Atty. (Lawrence M. Henry, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, HILL and SETH, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

A two-count information was filed against McCarthy. Each count charged an unlawful sale of lysergic acid diethylamide (LSD).[1] She was tried and found guilty by a jury on each count. Imposition of sentence was suspended and she was placed on probation for a period of two years on each count, to run concurrently. She has appealed and asserts two grounds for reversal:

(1) That the evidence established the defense of entrapment as a matter of law; and

(2) That the evidence was insufficient to establish that the tablets which defendant sold were LSD.

Our function in passing on these contentions will be to determine whether the evidence considered in a light most favorable to the prosecution and the inferences reasonably deductible therefrom afford substantial support for the verdicts of the jury, which resolved such contentions adversely to the defendant.[2]

The evidence, so viewed, established the following facts:

On May 3, 1967, L. L. Orton was an agent of the Federal Bureau of Drug Abuse Control, and he operated in an undercover capacity in detecting illegal sales or distribution of controlled drugs. He was then being assisted by Julie Green, in the capacity of an informer.

By prearrangement, Orton and Green met at a tavern in Boulder, Colorado, known as "The Sink," on May 3, 1967. When Orton entered the tavern, Green was sitting in a booth. He sat down in the booth with her. Orton was disguised so that it was not likely that he would be suspected of being a federal agent. They were joined by four or five other "hippie type" persons, a type that frequented The Sink.

Green was acquainted with the defendant. She had known her at Fort Collins, Colorado. About 6:30 p. m. of that day, defendant came over to the booth where Orton and Green were seated and asked them what they were doing in Boulder. Green replied that they were looking for "acid," meaning LSD. Defendant stated she knew where she could get them some LSD. Green and McCarthy then went

---

1. Commonly known as LSD, and among users and unlawful dealers as "acid."

2. Williams v. United States, 10 Cir., 368 F.2d 972, 975; Steiger v. United States, 10 Cir., 373 F.2d 133, 135; Johnson v. United States, 10 Cir., 380 F.2d 810, 812; Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

to the rear of the tavern, where the rest rooms were located. They returned after about five minutes. Orton and Green left The Sink about 6:45 p. m. and entered a car parked in front of The Sink. The defendant came over to the car where they were seated and told them she could get the LSD and that it would cost $7.50 per tablet. Orton told the defendant that the price was "quite high." Defendant replied that the acid was very good; that it was 1,000 micrograms, and that 100 micrograms was all that was needed for "a trip." Orton then agreed to pay $7.50 per tablet and stated that he wanted to buy 10 tablets. Defendant stated she would meet him later at The Sink.

Orton and Green returned to The Sink. About 15 minutes later, defendant returned and asked Orton and Green to go outside with her. They went outside and entered a red Chevrolet. Defendant drove the Chevrolet about three blocks from The Sink, stopped in the middle of the block, and handed to Orton a package wrapped in tan tissue paper. Orton opened the package and saw that it contained five tablets. Orton told defendant he had ordered 10 tablets. Defendant told him she would get the other five tablets later in the evening. Orton paid her $35 and stated he would pay her $40 when the remaining tablets were delivered. Defendant then drove back to The Sink by a very circuitous route. She let Orton and Green out and then drove away.

Orton and Green then went to another tavern about a block from The Sink, known as "The Buff Room," where defendant had told them she would later meet them. Shortly after they arrived at The Buff Room, defendant joined them and engaged in conversation. However, nothing was said about the additional five tablets. A number of "hippie type" individuals were present. Defendant left The Buff Room and returned about 8:30 p. m. and asked Orton and Green to go outside with her. After going outside, Green returned to The Buff Room and Orton and defendant started walking along College Street. Defendant handed Orton a black and gold matchbox. He opened it and it contained five tablets, similar to the ones defendant had earlier delivered to him. He paid defendant $40.

The identity of the tablets was carefully preserved and both the first five and the second five delivered by the defendant to Orton were tested by one William G. Martin, a chemist for the United States Food and Drug Administration at Denver, Colorado. The duties of Martin were to examine and analyze drugs. Martin duly qualified as an expert in drug identification and analysis. He testified he used the thin layer chromatography method in testing the tablets to determine if they contained LSD. He stated that in conducting the test he ran checks with three different solvents. He further testified that the test he employed was accepted as a proper method in determining whether LSD was present in the tablets, and that based on the results of the tests, with different solvents, it was his opinion that the 10 tablets contained LSD.

The fact "that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the creative activity' of law-enforcement officials." [3]

Here, defendant approached Orton and Green. They did not approach her. She asked them what they were doing in Boulder. When Green replied they were looking for "acid" (LSD), defendant stated she knew where she could get them some.

3. Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848; Martinez v. United States, 10 Cir., 300 F.2d 9, 10; Lucas v. United States, 10 Cir., 355 F.2d 245, 249; Rowlette v. United States, 10 Cir., 392 F.2d 437, 439.

Under the evidence, the jury were fully warranted in finding that defendant stood ready and willing to make unlawful sales of LSD, and that all that Orton and Green did was to give her an opportunity to do so.

The tablets were tested by a government chemist, who, after making a recognized test, using several different solvents, concluded that the tablets contained LSD, and he testified that on the basis of such test, it was his opinion that the tablets contained LSD. There was substantial evidence to justify the jury in finding the tablets contained LSD.

Accordingly, the order appealed from is affirmed.