**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar W. WEISS, Defendant-Appellant.
No. 37–70.**

United States Court of Appeals,
Tenth Circuit.

Sept. 17, 1970.

Alice Loveland, Denver, Colo., (Thomas K. Hudson, Denver, Colo., on the brief) for appellant.

Leonard W. D. Campbell, Asst. U. S. Atty., (James L. Treece, U. S. Atty., on the brief) for appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

PHILLIPS, Circuit Judge.

Weiss was charged by a four-count indictment with violations of 18 U.S. C.A. § 1001, 62 Stat. 749, which in part here pertinent reads:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully * * * makes any false, fictitious or fraudulent state-

ments or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Each of Counts I and II of the indictment charged Weiss with making such a false statement. Counts III and IV charged him with using such a false writing. He was convicted on all four counts. Imposition of sentence was suspended and Weiss was placed on probation for three years.

On March 16, 1966, the Bureau of Land Management, Department of the Interior, in accordance with regulations duly promulgated by the Secretary of the Interior, pursuant to 43 U.S.C.A. § 1201, commenced a contest of certain unpatented mining claims by filing a complaint in the Colorado Land Office, Bureau of Land Management, Department of the Interior, which office had jurisdiction over the lands involved.

The complaint described the mining claims by number and location. It named Weiss and 11 others as contestees and alleged that they owned or claimed some interest in such claims; that the lands involved were public lands of the United States, and that the claims were invalid for five reasons stated in the complaint. Each of such reasons was a good ground for adjudging that the claims were invalid.

On April 12, 1966, Robert G. Gnam filed in the Colorado Land Office an affidavit of service, in which he averred that on April 7, 1966, he personally served and delivered to Weiss at 3241 Sheridan Boulevard, Denver, Colorado, the complaint referred to above, which was particularly described in such affidavit, together with a copy of Circular No. 2164, attached thereto.[1]

On December 1, 1966, the Department of the Interior, Bureau of Land Management, filed its decision in the contest, in which it found that a copy of the complaint was served on Weiss on April 7, 1966, and an answer filed by Albert Latham, Jr., as attorney for Weiss, was delivered to the Colorado Land Office on May 16, 1966, and that no answers were filed by the other contestees within 30 days after service was completed on them. It decided that Weiss did not file an answer within 30 days after service of the complaint, and therefore his answer was not timely. It decided that since none of the contestees had filed an 'answer within 30 days after service upon them, the allegations of the complaint should be taken as admitted, and the case decided without

1. Circular No. 2164, promulgated by the Department of the Interior, pursuant to the statute referred to above, provides for the hearings procedures in contests of mining claims.

By the Act of July 16, 1946, 60 Stat. 1100, (43 U.S.C.A. § 1201) the Secretary of the Interior was authorized to promulgate regulations for the enforcement and execution of statutory provisions relating to public lands.

Circular No. 2164 embraces all the regulations issued pursuant to § 1201, supra, that relate to the procedures in the contest of the legality or validity of any entry or settlement on a mining claim. They were issued on September 21, 1964, and were in force at all times pertinent in this case.

Section 1852.1–3 of Circular No. 2164 provides that contests must be initiated by the filing of a complaint.

Section 1852.1–5 of such Circular provides that the complaint must be served upon every contestee. Among the methods of service provided for in such section, one is the delivery of a copy of the complaint to the contestee in person.

Section 1852.1–6 provides: "Within 30 days after service of the complaint * * * the contestee must file in the office where the contest is pending an answer specifically meeting and responding to the allegations of the complaint, together with proof of service of a copy of the answer upon a contestant as provided in § 1852.1–5(b) (3). * * *"

Section 1852.1–7 provides: "(a) If an answer is not filed as required, the allegations of the complaint will be taken as admitted by the contestee and the Manager will decide the case without a hearing."

a hearing. It decided that each of the mining claims was invalid.

From such decision Weiss filed a notice of appeal, accompanied by a statement of the reasons therefor. He also filed in the Bureau of Land Management in support of his appeal, the three affidavits upon which the charges in the indictment were predicated. One of the affidavits was made by Weiss, himself, one by John F. Milan, and one by Edward Culver.

In his own affidavit, Weiss, after stating he was a contestee in the mining claim contest referred to above and setting forth facts which accurately described such contest, said:

That on April 19, 1966, he was served with a Complaint in the alley in the rear of his home at 3241 Sheridan Boulevard, Denver, Colorado.

"That on April 6 and 7, 1966, he was in the City of Durango, Colorado.

"That prior to April 19, 1966, he was never personally served with any documents regarding the contest stated above."

Milan's affidavit averred:

"That on April 19, 1966, he had occasion to drive Mr. Oscar W. Weiss from his office to Mr. Weiss's residence at 3241 Sheridan Boulevard, Denver, Colorado; that he drove into the alleyway between Sheridan Boulevard and Ames Street, headed north at approximately 7:00 o'clock in the evening, and that when he arrived at the rear of the Weiss residence an automobile was parked blocking the alley so that he could not pass; that a man got out of the parked car and approached his car and contacted Mr. Weiss as he got out of the car; that the man handed a sheaf of papers to Mr. Weiss and that Mr. Weiss turned to him and stated he had just been served with a complaint involving mining claims he owned in Jackson County, Colorado."

Milan testified that the affidavit which he signed was brought to him by Weiss; that he drove Weiss home four or five times in the month of April 1966; that he did not recall the precise date stated in the affidavit at the time he signed it; that he did not attach any importance to such date, and that there was no discussion of the date between him and Weiss.

Culver averred in his affidavit:

"That he is the business manager of Mercy Hospital in the City of Durango, Colorado.

"That on April 6 and April 7, 1966, he consulted in Durango, Colorado, with Mr. Oscar W. Weiss of the City and County of Denver, Colorado.

"That to his knowledge, Mr. Oscar W. Weiss was in the City of Durango, Colorado on April 6 and on April 7, 1966."

Culver testified that Weiss came to him in December 1966 or January 1967 and told him he needed an affidavit stating that he, Weiss, was in Durango in April 1966; that Weiss showed him the desired affidavit and he signed it; that he did not remember, at the time he signed it, the dates the affidavit stated Weiss was in Durango; that he assumed Weiss knew the dates, and he presumed that they were correctly stated in the affidavit.

Gnam testified that about dusk in the evening of April 7, 1966, he was driving toward the home of Weiss on Sheridan Boulevard; that as he approached the home he slowed down to endeavor to determine if any lights were on in the Weiss house; that he looked in his rear view mirror and saw Weiss riding as a passenger in a car driven by another man approaching closely from the rear; that he further reduced his speed and let the other car pass him; that the driver of the other car turned right at the next intersection and right again at the alley; that he followed the other car until it stopped in the alley at the rear of the Weiss home; that he stopped, and when Weiss got out of the other car

he got out of his car, addressed Weiss by name, and handed him a copy of the complaint and of Circular No. 2164. The notary jurat on Gnam's affidavit is dated April 8, 1966, and the stamp on the affidavit of service reads: "Received Colorado Land Office Denver, Colorado 1966 Apr 12 PM 12 23 6."

It will be recalled that Weiss averred in his affidavit that he was served on April 19, 1966, in the alley at the rear of his home.

After proper identification by Don Cenyon, assistant manager of passenger refunds and records of Trans-World Airlines at Kansas City, Missouri, the Government introduced two coupons of a two-part airline ticket, which Cenyon obtained from the records of TWA in Kansas City, Missouri. Each coupon named O. S. Weiss as the passenger. One coupon was for a flight from Denver to Durango on April 4, 1966, and the other for a flight from Durango to Denver on April 5, 1966. The tickets were issued by TWA, but the transportation was on Frontier Airlines, and the tickets were picked up by Frontier from the passenger. In the normal course of business, Frontier billed TWA for the fares and sent it the coupons. Flight Coupon No. 1, covering the trip from Denver to Durango, had a perforation showing it was used on April 4, 1966, and Flight Coupon No. 2, covering the trip from Durango to Denver, had a perforation showing it was used on April 5, 1966.

The Government introduced Exhibits 30, 31, and 32. Marion Voss testified he had been the owner and manager of the Silver Spur Motel in Durango, Colorado, since 1957. He identified Exhibits 30 and 32, and stated they were pages from the motel registration register, posted daily, showing the date, the names of guests registered at the motel, and the room to which each was assigned, and that they were maintained under his supervision in the

regular course of the motel's business. He said they were kept "so we don't get messed up on our rooms." On Exhibit 30, the registration register for April 4, 1966, under the headings "Name" and "Residence" appears "Weiss, Oscar W., 3241 Sheridan, Denver, Colo. * * * Room 11." Exhibit 32 is the registration register for April 6, 1966. The name of Oscar W. Weiss does not appear thereon.

Exhibit 31 is a registration slip of the Silver Spur Motel. It shows the name of Oscar W. Weiss in printing, "Room 11," and the date, "4/4/66." Counsel for Weiss stated he did not object to the admission of Exhibit 31.[2]

The Government introduced Exhibits 23 and 24, which are colored photographs of the mining claims in contest, showing the beauty, usefulness and desirability of the land covered by the claims, to show motive and intent on the part of Weiss in making and using the affidavits.

Attempts to serve Weiss by registered mail had failed of delivery. In talking with Rogers Robinson, an attorney in the office of the General Counsel, United States Department of Agriculture, in Denver, who was in charge of the contest action, Gnam, who lived in the same neighborhood as Weiss, agreed to undertake to make the personal service on Weiss. Robinson told him if Mr. Weiss was not at home, he could make the service on Mrs. Weiss, if she was there. Gnam went to the Weiss home on April 6, 1966, and rang the doorbell. A lady answered. He asked her if Mr. Weiss was home. She answered, "No." He asked her if she was Mrs. Weiss. She said, "Yes." He then handed her a copy of the complaint and of Circular No. 2164.

On April 7, 1966, Gnam talked again with Rogers Robinson. They decided that the service on Mrs. Weiss might not be valid service, and that an effort

---

2. The name on the registration slip was printed in ink. In his testimony Weiss stated that printing was the way he usually wrote.

should be made to serve Weiss personally.

Robinson testified that when he instructed Gnam how to serve the complaint and Circular No. 2164, he believed service on Mrs. Weiss, if Weiss was not at home, would be good, but after looking into the matter further, he decided that to make personal service of the complaint and Circular No. 2164 valid, they had to be handed to Weiss, himself.

Vera Weiss, wife of the defendant, testified that on the evening of April 6, 1966, a man came to her home and inquired if Weiss was in; that she answered, "No"; that he asked if she was Mrs. Weiss, and she answered, "Yes"; that he then handed her some papers and asked her to give them to Mr. Weiss; that she took the papers; that Weiss was out of town and she didn't know what to do, so she called Albert Latham, "our attorney," and he suggested to her that she mail the papers to him; that she enclosed the papers with a note reading, "Handed to Vera Weiss shortly after 6 p. m., Wed. April 6, to give to Mr. Weiss"; that she deposited the envelope in a mailbox two blocks from her home; that she knew it would not be picked up by the mailman until 9 a. m., April 7, 1966, as it was already past 6 p. m. She further testified that Weiss was not at home on April 6, and so far as she knew, he was not home on April 7; that about two weeks or 10 days later, Weiss came in the house and said he had been served with some papers. She reiterated that Weiss was out of town on April 6, but she did not know where he was. She said that he went to Durango once in April 1966, but she did not undertake to give the dates.

Weiss testified that he resided at 3241 Sheridan Boulevard; that he was in Durango, Colorado, on April 6 and 7, 1966; that he was there two days and stayed at the Silver Spur Motel; that he was there on business for Magdalene Gardens, Inc.

He further testified that he did not intend to make any false, fictitious, or fraudulent statement, and that he honestly believed the truth of the facts contained in the statement. He further stated that he was served at the rear of his home with the complaint and Circular No. 2164 on April 19, 1966.

The court instructed the jury that an element of the charge in each of the several counts of the indictment was that the false statement pertained to a matter that was material, that is, that "it would have a tendency or capability of influencing the decision of the Government agency," and that it was not necessary that the agency actually be deceived by the false statement, but it must be capable of deceiving the agency.

The question of whether the complaint was served on Weiss on April 7 or April 19, 1966, was a matter the Bureau of Land Management, Department of the Interior, had to determine in its decision on the appeal from the decision of the Manager of the Colorado Land Office. That was the most important issue of the case on appeal, because if the Bureau of Land Management decided that the complaint was served on April 7, 1966, the decision of the Manager of the Colorado Land Office had to be affirmed, but if it was made on April 19, 1966, the decision had to be reversed.

The court, under proper instructions,[3] submitted the issue of materiality to the jury, and it, by its general verdict, found that issue against Weiss. Counsel for Weiss assert that the court should have decided the issue of materiality, itself, and should not have submitted it to the jury. Following the charge to the jury, counsel for Weiss stated to the court that Weiss had no objections to the charge as given, and before the charge was given, counsel for Weiss stated to the court he had no objections to the instructions the

---

3. The instruction on materiality was in accord with the applicable law, as stated in Poulos v. United States, 10 Cir., 387 F.2d 4, 6; and Gonzales v. United States, 10 Cir., 286 F.2d 118, 122.

court proposed to give on materiality. The question of the propriety of submitting the issue of materiality to the jury not only was not raised below, but was acquiesced in affirmatively by counsel for Weiss.

Counsel for Weiss contend that the court erred in overruling Weiss's motion for a directed verdict at the close of all the evidence, on the ground that the evidence did not establish that the alleged false statement was made "knowingly and wilfully" by Weiss.

■ In passing upon the sufficiency of the evidence to support a verdict of guilty, an appellate court will not weigh conflicting evidence nor consider the credibility of the witnesses; and it must view the evidence in a light most favorable to the prosecution and determine the question of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict.[4]

■ Applying the foregoing test, we think it clear that the motion for a directed verdict was properly overruled.

■ The Government established that its Exhibits 25, 26, 30 and 32 were rec-

ords of acts, transactions, occurrences, or events made in the regular course of a business, and that "it was the regular course of" the "business to make" them at the time they occurred, or "within a reasonable time thereafter." We hold that the exhibits were admissible under the Shop Book Rule. 28 U.S.C.A. § 1732.

■ Exhibits 23 and 24 were photographs of the mining claims in contest. They showed the beauty, desirability, and usefulness of the claims, apart from any mineral value, and tended to establish a motive for Weiss's trying to defeat the contest of the claims by false affidavits filed in the appeal from the decision of the Land Office Manager.

■ Permitting the jury to separate during the course of the trial or after the case was committed to them and before it was decided was a matter within the discretion of the trial judge,[5] and there was no showing of prejudice or abuse of discretion. Moreover, the jurors were properly admonished that none of them should talk to anyone about the case, or permit anyone to talk to him about the case while they were separated.

Accordingly, we affirm.

4. Steiger v. United States, 10 Cir., 373 F.2d 133, 135; Williams v. United States, 10 Cir., 368 F.2d 972, 975; Lucas v. United States, 10 Cir., 355 F.2d 245, 249; Pilgreen v. United States, 8 Cir., 157 F.2d 427, 428; Johnson v. United States, 10 Cir., 380 F.2d 810, 812; McCarthy v. United States, 10 Cir., 399 F.2d 708, 709.

5. Hines v. United States, 10 Cir., 365 F.2d 649, 651.