**Ernest Clifford LUCAS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 8367.**

United States Court of Appeals
Tenth Circuit.

Jan. 24, 1966.

James F. Fellingham, Oklahoma City, Okl., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty. (Newell A. George, U. S. Atty., on the brief), for appellee.

Before PICKETT, LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

The appellant, Ernest Clifford Lucas, and his codefendant, Shirley Ann Haygood, who has not appealed, were convicted by a jury on all three counts of an information charging them with committing the offenses of the unlawful sale and transfer of heroin hydrochloride in violation of 26 U.S.C. § 4705(a), the purchase and possession of the same narcotic drug in violation of 26 U.S.C. § 4704 (a) and the concealment and possession of the same drug knowing it had been improperly imported into the United States in violation of 21 U.S.C. § 174. Lucas was thereafter sentenced to ten years confinement on Count 1, five years on Count 2 and ten years on Count 3, the sentences on Counts 2 and 3 to run concurrently with the sentence on Count 1. A motion for new trial was denied.

In his direct appeal here, Lucas has asserted two grounds of error. First, he alleges the trial court erred in failing to direct an acquittal as a matter of law on Count 1 for the reason that the evidence shows that he merely acted as an agent of Narcotics Agent Hill in procuring the narcotics for Hill and therefore he is innocent by virtue of being a mere conduit in the whole transaction. The second error asserted is that the court erred in not granting his motion for judgment of acquittal, which motion claimed that as a matter of law, appellant was entrapped into committing the acts in question.

While the transaction for which the appellant was convicted occurred on May 16, 1961, in view of the defense of entrapment, it is necessary for us to review the facts leading up to that date, as best we can from the record.

The chief witness for the government was Federal Narcotics Agent Charles G. Hill who acted as an undercover agent in this affair. According to Agent Hill, he first met Lucas on May 8, 1961. At that meeting, after the subject of narcotics was raised, Hill asked Lucas if he was in a position to sell narcotics to him, but Lucas replied he had none. Hill does not recall who initiated the subject of nar-

cotics. Hill said he and Lucas drove to Kansas City, Missouri, on that date to see if Lucas could obtain narcotics there but he was unsuccessful. According to Hill, he visited Lucas at Lucas' home in Kansas City, Kansas, on at least three or four occasions between May 8 and May 16 and that each time he was there he asked about the availability of narcotics. Lucas told him that most of the narcotics were in Kansas City, Missouri, that some narcotics were in Kansas City, Kansas, but that he, Lucas, wouldn't make a connection for it until May 15th. Hill said he gave Lucas his phone number and Lucas said he would call him when the narcotics became available. Hill said Lucas told him he was still a "user" and Hill observed him using paragoric.

When Hill was asked by Lucas why he was after narcotics, Hill purportedly replied that he was going to obtain the capsules and further dilute them and re-sell them for a profit. At the trial, upon being asked the question, "Did you attempt to make him [Lucas] feel friendly toward you?", Hill replied, "I attempted to make Mr. Lucas believe that I, too, was involved in the narcotic traffic, nothing else." Finally, Agent Hill testified that subsequent to May 16, he gave Lucas $42 to provide more heroin for him because Lucas had offered to sell more of it to Hill, but did not receive any heroin in return.

Insofar as the transaction on May 16 is concerned, Agent Hill stated that he was driving in the vicinity of Lucas' house when he saw Lucas and another male known as Al. Hill called to Lucas and Al to join him in the car, which they did, and Hill drove the parties to Lucas' house, where he was invited in by Lucas. Lucas then asked Hill if he had any money, to which Hill replied he did if anything was happening. Lucas then told Hill he could obtain a quantity of heroin for him at that time but that he would have to go to a girl to get it. Hill said that Lucas then left and returned in a few minutes with codefendant, Shirley

Ann Haygood. Lucas and Haygood then had a discussion in the kitchen which Agent Hill overheard. Hill heard Miss Haygood say she would sell the capsules but that she had to make a good profit because that was all she had left. Then Lucas told Hill he could have five capsules for $36 and asked for the money at that time. Hill counted out $36 in government advance funds and handed it to Lucas who handed some of the money to Miss Haygood. Miss Haygood in return handed a small package wrapped in tin foil to Lucas who gave it to Hill. Hill testified further that he opened the package then but did not see an original stamp. The capsules therein each contained white powder substance.[1] Next, the three parties involved had a conversation and Miss Haygood asked Agent Hill not to reveal where he received the heroin.

Appellant Lucas' version of his association with Agent Hill depicts a somewhat different story. He admitted a previous conviction for possession of narcotics in 1953 and that he was then a user but had been cured. He testified he was introduced to Hill by one Gerald Ross during the last of April or early May of 1961 and that Ross brought up the subject of narcotics but that he, Lucas, denied having access to it. He said that Hill came to see him every day from their first meeting until he was arrested in June and that each time Hill asked for narcotics. Lucas replied that he no longer mixed in this kind of thing. Lucas said one story Hill told him was that he needed rent money and if he could get three or four "things" he could double his money. Lucas said at the time he met Hill, he had no notion at all about dealing in narcotics.

Insofar as the May 16 transaction is concerned, Lucas' testimony is inconsistent and contradicting. He said he left his house where Hill and the man named Al were and walked to Miss Haygood's house and there apparently telephoned a man and asked him to help a friend. The

---

1. It was stipulated that the contents of the capsules was heroin hydrochloride.

other party told Lucas that he must come himself even though Lucas told him that he no longer wanted to get involved. According to Lucas, he and Miss Haygood then left Miss Haygood's house and returned to Lucas' house and there he gave Hill a package but didn't know its contents.

On cross-examination, Lucas said the phone call he made was to a man named Thad who was believed to have narcotics. The package he gave Hill on the 16th was acquired from Thad on the 13th or 14th but that he didn't give it to Hill then because he was in hopes of finding some other way to help him in his financial troubles. Lucas testified that when he gave the package to Hill on the 16th he asked for no money in return. He did admit receiving $42 from Hill prior to the 16th upon telling Hill that he thought he could make a "buy" for him.

Codefendant Shirley Ann Haygood testified in her own behalf. In recalling the events of May 16th, she stated that Lucas came to her house to use the phone. She then accompanied Lucas back to his house purportedly to get some ice cream and cookies. Miss Haygood denied ever giving any package that day to Lucas and having ever had anything to do with narcotics.

■■■ Appellant's first ground of error concerning his being only an agent of Narcotics Agent Hill for the purpose of procuring the drugs is raised here on appeal for the first time. He relies on the case of United States v. Prince, 3 Cir., 264 F.2d 850, and the cases cited therein to support this contention. Nowhere in the record does it appear that appellant brought this issue to the trial court's attention either in his motion for judgment of acquittal or in a request for instructions. He made no objection to the instructions as given. We have no alternative but to disregard this proposition. Whatever showing he might make here is deemed waived by his failure to properly present the issue below. Cf. Corbin v. United States, 10 Cir., 253 F.2d 646. It is true as we recently said in Stanfield v. United States [2] that this court in criminal cases will notice and correct grave errors even though not raised properly below. But, like Stanfield, supra, this is not such a case for the proposition asserted by appellant is far from being "plain error". Irrespective of whose testimony is believed, appellant's association with either Shirley Ann Haygood or the man called "Thad" would cast serious doubt on this defense for as we read the cases, association with the seller is not compatible with being a mere procuring agent for the buyer. See United States v. Prince, supra.

■■■ Another procedural difficulty is encountered in reviewing appellant's second proposition concerning the defense of entrapment. His motion for judgment of acquittal was made at the conclusion of the government's case and denied; then he put on evidence in his own behalf but failed to renew the motion at the conclusion of all the evidence. The failure to renew the motion normally constitutes a waiver of any objection to the denial of the motion. See Hughes v. United States, 10 Cir., 320 F.2d 459, cert. denied 375 U.S. 966, 84 S.Ct. 483, 11 L.Ed.2d 415. However, because the defense raised is entrapment and because of appellant's claim in his brief that this is a travesty of justice, we have decided to review the issue notwithstanding the procedural deficiency.

The issue to decide is whether appellant's conviction should be set aside as a matter of law on the basis of entrapment. The defense of entrapment is firmly entrenched in the federal courts although its meaning and application have received divergent views.[3] The task of setting forth an all encompassing rule defining the course of conduct of government agents which would amount to entrapment is impossible. The lan-

---

2. 10 Cir., 350 F.2d 518 (1965).

3. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Sher-man v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; and Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859.

guage used in most of the cases defining entrapment must be read in light of the facts involved therein.

■■ It is certain that government agents may afford the opportunity for the commission of an offense and may do so even if they use artifice and stratagem. Sorrells v. United States, supra, note 3. The question of course is how far the government may go. In answering that question, the cases disclose that a relevant factor to be considered is the predisposition of the accused toward committing the crime for it seems safe to assume that officials may press harder when a propensity to commit a crime is present. Cf. Ryles v. United States, 10 Cir., 183 F.2d 944, cert. denied, 340 U.S. 887, 71 S.Ct. 123, 95 L.Ed. 637. As the Supreme Court said in Sherman v. United States, supra, note 3, 356 U.S. at p. 372, 78 S.Ct. at p. 821: "Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials. (Citation omitted) To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

The facts presented the jury with a conflicting picture. Appellant Lucas, after admitting his previous conviction of a narcotics offense, portrayed himself as a man going straight so to speak, as wanting no part in the narcotics trade but as a member of the Islam faith who only wanted to help others including Agent Hill, that he was unaware of the contents of the package he gave Hill on May 16th, but then stating the package was obtained several days earlier from a man he knew to be engaged in narcotics traffic, and that he only succumbed to the agent's repeated requests in an effort to provide financial assistance.

On the other hand, Agent Hill's testimony portrays Lucas as an admitted user, in whose presence on their initial meeting was solicited by another for narcotics and who on the same occasion accompanied Hill to Kansas City, Missouri, in search of narcotics; and who admitted to knowing the location of narcotics but who indicated he couldn't make a contact until May 15th.

■ We agree with the trial court that the facts do not indicate that Lucas was entrapped as a matter of law. The facts are too conflicting to say the creativity of the crime was solely chargeable to the government agent who set a trap for an unwary innocent. Rather the matter was correctly submitted to the jury and it was not unreasonable for them to believe that Lucas was a person engaged in illegal narcotic traffic and not the innocent reluctant victim as he portrayed himself. It is not our function to determine the weight of the evidence or the credibility of the witnesses. See Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, and Martinez v. United States, 10 Cir., 300 F.2d 9. We are satisfied the verdict is supported by substantial evidence. The case is therefore affirmed.