Pete Griego GARCIA, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9105.

United States Court of Appeals
Tenth Circuit.

March 2, 1967.

George P. Jones, III, Albuquerque, N. M., for appellant.

John A. Babington, Albuquerque, N. M. (John Quinn, Albuquerque, N. M., with him on brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

MURRAH, Chief Judge.

 This appeal is from four concurrent twelve year sentences for violation of the narcotic laws. If the conviction on any one count is sustainable, conviction on the other counts must also be sustained. See Jordan v. United States, 10 Cir., 345 F.2d 302.

Counts 1 and 2 charge unlawful receipt, concealment and sale of heroin in violation of 21 U.S.C. § 174 and 26 U.S.C. § 4705(a). Counts 3 and 4 charge like offenses on another date. The government's case follows the familiar pattern in which an undercover agent or informer is provided with government funds for the purchase of narcotics under the surveillance of enforcement officers.

In this case Detective Kingsbury of the Bernalillo County, New Mexico, Sheriff's Office testified without contradiction that early in November, 1965, he was introduced into the Albuquerque neighborhood, where the alleged offenses were committed, by a man who represented him as a former cellmate at the Nevada State Penitentiary. Through this connection, he met a number of people in this area, including one Abeyta. And see Abeyta v. United States, 10 Cir., 368 F.2d 544. On the 30th day of November Kingsbury drove his car to Abeyta's house on Felicitas Street. After some conversation, Abeyta introduced him to appellant Garcia. After some further conversation, he asked Garcia "if he had a round of heroin to sell * * *". Garcia replied that "he had no more heroin. That if he had anymore, he would still be inside the house selling it. He said he was out, but that he was going after some more * * * and that he would sell me my round at that time." Kingsbury "offered to take him wherever he had to go after his supply." Whereupon, Abeyta, Garcia and Kingsbury drove to a point where Garcia told him to stop so "he could make a phone call". After making the call, Garcia got back into the car and Kingsbury drove under his direction to another point where Garcia told him to park. He gave Garcia the $50 the federal agents had given him earlier in the afternoon. Garcia got out of the car, walked out of view and returned in about 15 minutes. After getting into the back seat of the car, Garcia took a cellophane package from his pocket and placed it in Kingsbury's hand. Upon examination, the cellophane package was found to contain 11 tinfoil wrapped capsules. Since the "deal" was $50 for 10 capsules, Garcia kept 1 capsule

and Kingsbury then drove him to a place where he wanted to get off. He took Abeyta back to his home and left the area. The package delivered to Kingsbury was found to contain heroin.

On the next day, December 1, Kingsbury again drove to Abeyta's house, arriving there about 4:30 p. m. He at first saw no one, but then saw Garcia in the shadow of the house "close to the trees". When he spoke, Garcia walked out to the car holding his left hand cupped. Kingsbury had purchased a bottle of wine and offered Garcia a drink. "He took it". As soon as Garcia had finished his drink, Kingsbury asked him "if he had any heroin to sell today". Garcia replied "Yes, I've got 6 or 7 caps", indicating they were in his hand. When Kingsbury offered to buy them, Garcia answered, "Well, we'll have to wait until Abeyta gets here. * * * I have to be careful." In a little while Abeyta appeared. Kingsbury alighted from the car and the three walked out of the light around to the south side of the house. Garcia counted 6 capsules in his hand, stated that he wanted to keep 2 for his own use, but would sell 4 of them if it was "all right with Abeyta". Abeyta took 2 $10 bills out of Kingsbury's hand, gave them to Garcia and said, "Give them to him". Garcia counted out four capsules, put them in the finger of a rubber glove and gave them to Kingsbury. Kingsbury left the area, went to the Sheriff's office, met the federal narcotics agents, and the capsules were found to contain heroin.

On cross-examination defense counsel sought to elicit the name of the "cellmate" who had introduced Kingsbury in the "area". The witness declined to disclose the name, and the court upheld the refusal. Appellant has assigned the ruling of the court as error contending that the testimony of the undisclosed party might have been relevant and helpful to appellant's defense, but that he was unable to determine the relevance of the testimony unless he knew the man's name.

■■ It seems to be settled that the government may be required to disclose the identity of an informer if his testimony might be relevant to the defense and it is made to appear on balance that justice would be best served by the disclosure.[1] When the question of disclosure arose in the trial of this case, the court excused the jury and conducted sufficient inquiry to make sure that the undisclosed person had not introduced the officer to Garcia, was not present when these offenses were committed and had nothing whatsoever to do with them. On the authority of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, Judge Bratton ruled that even if the undisclosed person be an informer, there was no reasonable likelihood that his testimony would be relevant or helpful to the defense. We agree.

■ Garcia also complains for the first time on appeal of the failure of the trial court to direct a verdict on the grounds that as a matter of law he was entrapped. It is significant that no such contention was made in the trial of the case. Instead, Garcia's counsel requested an instruction on entrapment. The government objected on the grounds that there was no factual basis for it. We agree that the evidence does not justify an inference that appellant was entrapped. Our case is strikingly like Maestas v. United States, 10 Cir., 341 F. 2d 493 and Lucero v. United States, 10 Cir., 311 F.2d 457, where the uncontradicted testimony showed the accused was able and willing to sell narcotics

1. See Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, in which the Supreme Court declined to adopt a fixed rule for disclosure. Instead, it stated, "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

when afforded an opportunity to do so. See also Hines v. United States, 10 Cir., 365 F.2d 649.

Apparently out of an abundance of precaution, and at the insistence of Garcia's counsel, the trial court did instruct the jury that the defense of entrapment had been interposed; that "to constitute a defense the entrapment must be unlawful"; that "unlawful entrapment" meant that the crime originated with the enforcement officers who induced the defendant to commit the crime when he had no previous disposition to do so. Judge Bratton explained to the jury that the defense of entrapment was based on the policy of the law not to entrap innocent persons into the commission of a crime. He went on to say that the defense of unlawful entrapment was not established if Garcia was engaged in similar crimes or was ready and willing to violate the law and the officers or their agents merely afforded him an opportunity. "Under these circumstances," said the judge, "entrapment is lawful rather than unlawful, even though the law enforcement officers may have used a ruse or otherwise concealed their identity."

No objections were made to these instructions, and indeed they were taken from a highly respected and generally accepted handbook by two distinguished trial judges which specifically states that "The law recognizes two kinds of entrapment: unlawful entrapment and lawful entrapment." See Mathes and Devitt, Federal Jury Practice and Instructions, § 10.12. Garcia suggests, however, that there can be no "lawful" entrapment and that the court's instructions on "lawful and unlawful entrapment" were confusing and prejudicial.

■ We must confess our inability to comprehend a "lawful" entrapment. In our view the accused is either entrapped or he is not entrapped. If he is entrapped, he cannot be punished.

■ "The defense of entrapment is firmly entrenched in the federal courts although its meaning and application have received divergent views. The task

of setting forth an all encompassing rule defining the course of conduct of government agents which would amount to entrapment is impossible." See Judge Hill in Lucas v. United States, 10 Cir., 355 F.2d 245, 248. But, after all that has been said on the subject, we think it is sufficient to a proper understanding of the defense of entrapment that if the state induces a person to do an unlawful act when he has no previous disposition to do so, it is not punishable, for in these circumstances, the state is particeps criminis, i. e. a partner in the crime. This is not to say, however, that the state is forbidden, even by ruse or strategem, to afford an able and willing seller of narcotics an opportunity to ply his trade. See Robinson v. United States, 10 Cir., 366 F.2d 575. If there is evidence tending to show that government agents may well have induced the accused to commit the crime charged, he is entitled to an instruction in the language we have suggested, and the jury should also be told that the burden is upon the government to prove beyond a reasonable doubt that its agents did not entrap the accused as that term is defined and is to be applied in the determination of guilt or innocence. Under this definition, the law need not be concerned whether the entrapment is "lawful" or "unlawful". The words add nothing to an understanding of the defense, and may indeed tend to confuse. But, we cannot agree with Garcia's counsel that the use of these terms in this case was so misleading or confusing as to prejudice the right of the accused who in our judgment was not entitled to an entrapment instruction in the first place. See United States v. McMillan, 2nd Cir., 368 F.2d 810.

■ Appellant also complains for the first time on appeal of the failure of the court to give a "purchasing or procuring agent instruction" on the second count. If, as he contends, Garcia merely acted as the agent of Kingsbury in the procurement of the drug which is the subject matter of count 2, he cannot be guilty of the offense charged therein. And, if the facts justify such an infer-

ence, he was entitled to have that issue submitted to the jury. See Lewis v. United States, 119 U.S.App.D.C. 145, 337 F.2d 541; Adams v. United States, 5 Cir., 220 F.2d 297. There was no request for any instruction, apparently it never occurred to able trial counsel, and we agree there is no factual basis for the defense. Moreover, in the view we take of the other counts on which concurrent sentences were imposed, the issue is irrelevant.

■ Complaint is also made here for the first time of the trial court's instruction in the language of § 174 that "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." Appellant does not deny that the instruction is in the language of the statute, but simply contends that it is unconstitutional. We have held otherwise in accordance with established law. See Maestas v. United States, supra, and cases cited.

The judgment is affirmed.