**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas ABBADESSA, Defendant-
Appellant.**

**No. 72-1441.**

United States Court of Appeals,
Tenth Circuit.

Dec. 27, 1972.

**1334**

Bruce E. Miller, Asst. U. S. Atty., Wichita, Kan. (Robert J. Roth, U. S. Atty., and Stephen K. Lester, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

A. Jack Focht, Wichita, Kan. (Smith, Shay, Farmer & Wetta, Wichita, Kan., on the brief), for defendant-appellant.

Before BREITENSTEIN, Senior Circuit Judge, McWILLIAMS, Circuit Judge, and CHRISTENSEN,[1] Senior District Judge.

CHRISTENSEN, Senior District Judge.

Appellant was convicted after jury trial of knowingly and intentionally distributing approximately five pounds of marihuana in violation of 21 U.S.C. § 841(a)(1). His appeal is based on contentions that the trial court should have held as a matter of law that he was entrapped, that certain evidentiary rulings were in error and that a jury instruction was prejudicially erroneous and repetitious. The case presents the seemingly incongruous situation of a probationer's being opportuned by a federal agent to violate the narcotics laws even though his probation presumably had

---

1. Of the District of Utah, sitting by designation.

been conditioned upon avoidance of such violations. In the assumption that probation generally is rehabilitative and that the status alone is not indicative of predisposition to repeat the adjudicated offense, we have made an especially critical examination of the record to see whether justification for solicitation by the government agent appears.

One John Furstenberg, while employed by the Bureau of Narcotics and Dangerous Drugs, repeatedly contacted appellant at his home and place of business over the course of several weeks and asked about buying drugs. On every such occasion prior to July 18, 1971, appellant replied in effect that he was on probation from a prior narcotics conviction, that he had no drugs for sale and that he did not want to get involved. However, on July 18, he told Furstenberg that he had been contacted by "two friends" passing through town on their way to New York who had approximately five pounds of Mexican marihuana which they would sell for $100 a pound. They were reported by appellant to be unwilling to meet personally with Furstenberg. Appellant offered to act as intermediary. On July 20, 1971, at a pre-arranged meeting, the transaction between appellant and Furstenberg upon which this prosecution is based was consummated. Appellant testified that he paid the $500 proceeds to his friends. Between that date and his arrest in September, 1971, he was contacted again by Furstenberg but declined further involvement.

Responsive to the defense of entrapment, the government attempted to prove appellant's preexisting propensity for dealing in drugs—beyond an admitted prior state conviction—by Furstenberg's testimony that he had been casually acquainted with appellant, that he

believed appellant might have drugs to sell because he was "very familiar with the drug distribution", and that he had known him "to be involved" in drug sales over a period of approximately a year and a half or two years. On cross-examination Furstenberg stated that on only one prior occasion had he actually seen appellant sell "hashish and grass". The witness at first said he thought the sale was in 1971 but later indicated that it would be "back a year and a half or two years" from the time of the trial, which was held in April, 1972. Because of uncertainty in Furstenberg's testimony and discrepancies in the evidence adduced by appellant,[2] whether the prior sale personally observed by the agent had been before or during appellant's probationary period was not clear. However, although Furstenberg was closely cross-examined concerning his personal observation of the one prior sale, there was no further cross or redirect examination concerning his knowledge of appellant's involvement with drug sales over a period of one and a half or two years. Appellant denied making the specific prior sale testified to by Furstenberg, but was not asked to deny or was not otherwise examined about Furstenberg's general testimony that appellant was acquainted with the distribution of drugs and had been involved in selling them over a substantial period of time. Appellant expressly admitted having possessed and used marihuana, without reference to any specific time.

Evidence was presented by the government concerning surveillance of appellant's home immediately before and following the sale which tended to show, although not conclusively, that appellant did not receive the marihuana from his "friends" under the circumstances

---

2. Appellant testified that it was during July and August, 1970, that he lived at the address where Furstenberg testified the prior sale occurred, which would place the sale before his state court conviction of September 9, 1970, and that he went to California immediately after leaving

there. Yet, appellant further testified that he was convicted before he went to California. One of appellant's witnesses testified that appellant was living at the place in question only during February and March, 1970.

claimed by him. There was also received in evidence a tape and transcript of the conversation between Furstenberg and appellant setting up the sale which, far from reflecting an insistent buyer and a coerced or reluctant seller, suggested the wary but mutually desired business dealings of persons no strangers to such transactions.[3]

We have concluded that there was sufficient evidence from which the jury could have found beyond a reasonable doubt that appellant was not entrapped, this burden of proof being properly imposed upon the prosecution in the trial court's instructions. Rowlett v. U. S., 392 F.2d 437, 439 (10th Cir. 1968); Martinez v. U. S., 373 F.2d 810, 812 (10th Cir. 1967). Evidence, both direct and circumstantial, together with the reasonable inferences drawn therefrom in the light most favorable to the government may be considered in view of the jury's verdict. United States v. Yates, 470 F.2d 968 (10th Cir. 1972).

In making available to appellant opportunities to commit the offense of which he was convicted, government agents employed neither fraud, trickery, nor pressure; Furstenberg's attempts to purchase drugs constituted persuasion, if at all, only by reason of repetition. Granted that particularly the latter circumstance raised a jury question with respect to it, entrapment was nevertheless not established as a matter of law. Lucas v. U. S., 355 F.2d 245 (10th Cir.),

cert. denied 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966). *Cf.* Maestas v. U. S., 341 F.2d 493 (10th Cir. 1965). See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958); Sorrells v. United States, 287 U.S. 578, 53 S.Ct. 210, 77 L.Ed. 413 (1932); United States v. Gibson, 446 F.2d 719 (10th Cir. 1971); Ryles v. United States, 183 F.2d 944 (10th Cir.), cert. denied 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637 (1950). *Cf.* Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

The controlling principles are well established in the cases above cited and require little elaboration. The facts before us are unlike the compounded pressures and artifice of *Sherman,* nor does anything here approach the "intolerable" degree of governmental participation in the crime rejected in United States v. Russell, 459 F.2d 671 (9th Cir. 1972), and United States v. Bueno, 447 F.2d 903 (5th Cir. 1971). The circumstances inconsistent with the theory of innocent or induced involvement go beyond appellant's former record, the evidence of an additional specific instance of his dealing in drugs and other involvements generally testified to by Furstenberg or admitted by appellant. The manner in which he closed the deal and the reasons he assigned for changing his mind about non-participation could also have been

3. Female: U. S. Headquarters [the name of the appellant's place of business].
Furstenberg: Yes, is Tom Abbadessa there?
Female: Yea, just a minute.
Abbadessa: Hello.
Furstenberg: Tom!
A. Yea.
F. This is John Furstenberg.
A. How ya doing?
F. Yea, just fine. Uh . . . did you have anything left?
A. Yes, I got a couple left.
F. Uh. Hum how many?
A. Five.

F. Uh . . . does anything, did anything go down on them, ya know like price?
A. A hundred.
F. Uh . . . I'll take all of them.
A. Okay.
F. When, when ya want to do it?
A. When . . . you ready now?
F. Yea.
A. Okay, why don't you meet me over my house?
F. Okay.
A. Okay?
F. Okay.
A. Okay, by-by.
F. By.

regarded by the jury as bearing upon predisposition. If peddling friends fortuitously arrived at a time when purchases were being solicited by Furstenberg, the resulting sale seemed motivated as much by appellant's friendship for his suppliers as by the opportunities afforded through casual acquaintance with and the reiterated requests of the purchaser.[4] Had "friends" been merely an excuse to insulate appellant from the intent which formerly he had disavowed in declining to become involved, the circumstances yet would evince a manipulation by appellant himself hardly in keeping with the theory that he was an otherwise innocent person induced by the government to violate the law. It was for the fact finder in view of all of the evidence before it to determine whether the appellant was a voluntary rather than an entrapped seller.

■ Criticism of the trial court's evidentiary rulings and of its denial of appellant's motion for a mistrial requires little comment. Where entrapment is put at issue the prosecution may introduce evidence reasonably bearing upon predisposition to illegally deal in drugs, including specific involvements and reputation. Ryles v. United States, 183 F.2d 944 (10th Cir.), cert. denied 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637 (1950). The direct examination concerning appellant's sale, use and possession of marihuana was appropriate. Cross-examination as to the drug orientation of his "mod" clothing store, however marginal in materiality, was contained by the trial court within permissible limits. It is unnecessary to consider whether evidence of prior arrests on drug charges not resulting in convictions may so bear upon reputation as to be admissible in response to entrapment defenses. The trial court promptly sustained appellant's objections to his interrogation about other arrests. The mere asking of the questions in the context presented did not mandate a mistrial. The jury was fairly instructed concerning the limited significance of prior offenses otherwise proved.

But questions with respect to the trial court's supplemental instructions to the jury justify more than passing comment. On four separate occasions instructions concerning the law of entrapment were given—once during the trial in the course of the presentation of evidence pertaining to that issue; once as a part of the final charge before the jury retired; once during the deliberations of the jury upon its requests for a written copy of instructions on the subject; and finally when the jury revealed that it was experiencing difficulty in arriving at a verdict.

■ Acquainting the jury during trial with the law of entrapment so that they better could understand the purpose and possible effect of the evidence, and again as part of the final charge, manifestly was proper. The instructions on these occasions were accurate and fair and no exception was taken to any of them. The court's subsequent response to the jurors' request during deliberations for a "written" copy of the charge on entrapment by further instructing them orally was not improper; it was discretionary with the court whether to supply them in writing. Oertle v. United States, 370 F.2d 719 (10th Cir. 1966), cert. denied 387 U.S. 943, 87 S.Ct. 2075, 18 L.Ed.2d 1329 (1967).

■ The addition at this point of a comment borrowed from Garcia v. United States, 373 F.2d 806, 809 (10th Cir. 1967), concerning "ruse or stratagem, to afford an able and willing seller

---

4. Appellant described his immediate reason for arranging the sale as follows: "So on July 20th he (Furstenberg) called me again and asked me if I would, you know, sell to him, and because I had these friends coming through Tucson who I had grown up with in New York and because he seemed like he was really interested in buying I tried to get the two of them to meet but the people from New York didn't want to meet John. So they asked me if I would just intercede and I had agreed."

of narcotics an opportunity to ply his trade", is the only phase of this charge which appellant attacks as being contrary to law, confusing or misleading. In determining propriety of supplemental instructions, they must be considered as a whole along with the general charge previously given, and a single sentence is not to be lifted out of context and considered separate and apart from the remainder. United States v. Wheeler, 444 F.2d 385 (10th Cir. 1971); Beckstead v. U. S., 272 F.2d 571 (10th Cir. 1959). In responding to the request for a copy of his prior instruction the court was not required to repeat them in precisely the same form. Generally this may be desirable to avoid the danger of undue emphasis through inharmonious changes or unjustified additions of substance. However, in the present instance no substantial alteration in the purport of the instructions was made, the additional comment was in harmony with what had been said before and was a part of a balanced restatement reflecting the theory of the defense as well as of the prosecution.[5]

After deliberating for several hours the jury indicated that it had been unable to agree. A determination that further deliberation should be required was made only after the court had obtained the agreement of counsel for such a course. On its own motion it then again outlined its prior charge concerning entrapment, including the *Garcia* comment theretofore and thereafter excepted to, together with other comments in the nature of a restrained *Allen*[6] charge to which no exception was taken. No complaint is made here concerning the latter element, the point urged being, again, that it was error to add the *Garcia* comment and that its repetition after the jury had announced that it had been unable to agree was "ambiguous" and appeared prejudicially to favor the government's position. A reading of the instructions does not bear out this contention. Despite the renewed recommendation of Munroe v. United States, 424 F.2d 243, 246 (10th Cir. 1970), concerning its timing in the event an *Allen*-type charge is to be given, which bears continuing reference and observation, we find no prejudicial error in the giving of the final supplemental instructions under the circumstances of the present case.[7]

---

5. Among other things the court stated in connection with its *Garcia* comment:

"So I told you that if the state induces him to do it when he had no intention to do it, what happens is that the state becomes a partner in the crime, so you can't convict. Now this is a factual issue which you have to determine.

"On the other hand, where a person already has a readiness and willingness to do an unlawful act, the mere fact that the government agents offered him or provided him what appears to be a favorable opportunity, this is no defense.

"And the state may not entrap a man but it is not entrapment to exercise a ruse or stratagem to afford an able and willing seller of narcotics an opportunity to ply his trade.

"So if you should find from the evidence before anything at all occurs with respect to the alleged offense the accused was ready and willing to commit the crime, such as that charged in the indictment, whenever opportunity was offered, and the government merely offered him an opportunity, entrapment has not occurred and the government's action is no defense.

"Of course, whenever I tell you that, I am going to tell you the other side of the coin, because it is a factual situation. You have got to decide. So if you find accused had no previous intent or purpose to commit any offense of the character charged, and if so only because he was induced or persuaded by some agent of the government, then entrapment has occurred. I told you that was a good defense and you would find him not guilty.

"I think I told you that the government had to prove to your satisfaction beyond a reasonable doubt that its agents did not entrap the accused, as I defined those terms to you."

6. Allen v. U. S., 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

7. The trial judge was leaving immediately thereafter to meet another commitment, and another judge presumably not in a

In summary: Disregard of the verdict of the jury under the circumstances here appearing would encroach without warrant upon the jury's fact finding prerogatives and tend to magnify a proper concern for fair adjustment opportunities on probation into a type of special immunity for probationers. There was substantial evidence, however subject to varying inferences, from which the jury found beyond a reasonable doubt that the defendant was not entrapped. No prejudicial error was committed in evidential rulings or by denial of the motion for mistrial. The instructions to the jury, including their supplementation, did not involve prejudicial error. Accordingly, the judgment below should be and is affirmed.

position to respond to possible further jury inquiry was scheduled to receive the

verdict, all with the consent of both parties.