**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis GURULE a/k/a Frank,
Defendant-Appellant.**

No. 74–1810.

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 20, 1975.

Decided Sept. 12, 1975.

Arthur Bosworth, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty. and Thomas E. Henry, Asst. U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Robert M. Vockrodt, Aurora, Colo., for defendant-appellant.

Before LEWIS, Chief Judge, and HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Francis Gurule a/k/a Frank (Gurule) appeals his jury conviction on three counts of distributing and aiding and abetting in the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1)[1] and 18 U.S.C. § 2.[2]

The first count of the indictment charged Gurule with having knowingly and intentionally distributed a quantity of heroin, a Schedule I controlled substance, on or about December 13, 1973, in Denver, Colorado. The second and third counts charged Gurule, Cloyd Ronald Penrod and Francisco Luis Ortega Nunez with distributing and aiding and abetting in the distribution of a quantity of heroin and a quantity of cocaine, the latter a Schedule II controlled substance, on or about January 13, 1974,[3] in Denver.

Gurule's defense at trial—and the primary contention he raises on this appeal—was that due to the activities of the drug enforcement agents and their informant, Larry Sawden, he was entrapped as a matter of law.

Government witness Agent Lee Phillips, of the Drug Enforcement Administration, testified that he was first introduced to Gurule by informant Larry Sawden on November 17, 1973; that Sawden reputed Gurule to be in possession of and willing to sell cocaine and that a purchase was made from Gurule on the 17th; that after the initial introduction he advised Sawden to "sever all relationships" with Gurule to avoid any problems of entrapment; that Sawden was not present at any of the transactions subsequent to the introduction; that he directly arranged a meeting with Gurule on December 12, 1973, at which time he was advised by Gurule that a kilo of cocaine had arrived in Denver on December 10th and could be purchased the following weekend; that he attempted to stall negotiations for a purchase at that time because bureau funds were not available; that Gurule then offered to supply a "free sample" of heroin to indicate the quality of the substance which would be available in the future; that on December 13, 1973, he met with Gurule, was given the "free sample" and was informed by Gurule that unless he agreed to purchase eight ounces of cocaine and eight ounces of heroin no further negotiations could be made with Gurule or his source of supply; that the price of the drugs was set at $1,000 per ounce plus an additional $1,000 to be paid to Gurule for his services; that Gurule later advised him that his source had informed him that the "free sample"

---

1. 21 U.S.C. § 841(a)(1) provides:

    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

    (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

    . . .

2. 18 U.S.C. § 2 provides:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, com-

mands, induces or procures its commission is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. Co-defendant Penrod was convicted in the same trial with Gurule but has not joined in this appeal. Charges were dismissed as to defendant Nunez.

was of a higher quality than initially indicated; that on January 4, 1974, he contacted Gurule and requested to purchase one kilo of cocaine and one pound of heroin; that Gurule told him he would have to talk to his source; that during a later conversation that same day he was informed by Gurule that the maximum purchase that could be worked out would be 12 ounces of heroin and 19 ounces of cocaine for a price of $35,000 plus an additional $1,000 for payment to Gurule; that they agreed the transaction would take place at 6:30 p. m. on January 13, 1974, at the Arapahoe County Airport; that he and Agent Koller of the Drug Enforcement Agency met Gurule at the airport on the 13th of January but were informed that the purchase had been changed to 23 ounces of cocaine and 12 ounces of heroin and that Gurule was to take them to an unknown location in Denver so they could be observed by his source to determine if they were police; that they were driven by Gurule to the Ranch Room Inn in Denver where the car was parked close to a window with the car's dome light on while Gurule left the car momentarily; that they observed someone looking at them out of the window and that shortly thereafter Gurule returned to the car with the narcotics in a brown paper bag; that after running a field test they arrested Gurule; and that Agent Koller, together with other agents, then entered the Ranch Room and arrested Penrod and Nunez, the only two persons found inside.

Agent Koller's testimony substantially corroborated the testimony of Agent Phillips relating to the above events which occurred on January 13, 1974.

Denver police officer Leuthauser testified that he was conducting a surveillance at the residence of Gurule on January 13, 1974; that on the *afternoon* of that day he followed Gurule first to the area of the Ranch Room Inn, then to the airport and back to the Ranch Room Inn where he observed Penrod open the back door of the Inn and set down what appeared to be a brown paper bag; and

that he then observed Gurule get out of his car, pick up a bag and return to the car.

Denver police officer Ramirez testified to the same effect as officer Leuthauser.

Special Agent Barter of the Drug Enforcement Administration testified that he had followed Gurule to the vicinity of the Ranch Room Inn on the *afternoon* of January 13, 1974, prior to the time Gurule had gone to the airport. Detective VanArk of the Boulder County Sheriff's Department also testified that on the *afternoon* of January 13, 1974, he followed Gurule to the Ranch Room Inn and observed him park his vehicle there.

Gurule testified in his own behalf that he had first met informant Larry Sawden at the Ranch Room Inn in late October or early November, 1973; that at a subsequent meeting in early November, 1973, Sawden identified himself to Gurule as a Narcotics Agent and solicited Gurule's help in "cracking" a drug ring; that he reluctantly agreed to cooperate with Sawden because he needed the money Sawden had offered; that he was introduced to Agent Phillips and was told by Sawden that this was the dealer he was to help catch; that at all times he believed Sawden to be a bona fide Agent and Phillips to be a drug dealer; that Sawden had provided him the narcotics he delivered to Agent Phillips on November 17th and December 13th by leaving them in Gurule's mailbox during the night and that Gurule had left the payoff money from the November 17th sale in the same mailbox to be picked up by Sawden; that the final arrangements for the meeting between Gurule and Agent Phillips on January 13, 1974, were made between Gurule and Sawden; that on January 13, 1974, Sawden advised Gurule that the drugs were to be picked up at the Ranch Room Inn that evening; and that he *had not* stopped at the Ranch Room Inn prior to his picking up the Agents at the Arapahoe County Airport on January 13, 1974. Gurule further testified that he had never in the past been involved in any narcotics dealings. He also presented witnesses who

testified as to his good reputation in the community.

The informant, Larry Sawden, was neither presented as a witness by the Government nor successfully subpoenaed by the defense.

## I.

Gurule contends that the defense of entrapment was established, under the facts heretofore recited, as a *matter of law* since no evidence was presented by the Government to show that he was "predisposed" to commit the offense charged nor was any evidence presented to rebut his testimony concerning the alleged inducement by informant Sawden. Alternatively he argues that the conduct of the Government's "agent-informant" was so "outrageous" that the Government should not have been permitted to obtain a conviction. We disagree.

■■■ Entrapment occurs when the criminal design originates with agents of the Government who implant in the mind of an innocent person the disposition to commit the offense. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 19, 77 L.Ed. 511 (1932); *United States v. Williams,* 488 F.2d 788 (10th Cir. 1973); *United States v. Hayes,* 477 F.2d 868 (10th Cir. 1973); *Martinez v. United States,* 373 F.2d 810 (10th Cir. 1967). In enforcing laws pertaining to vice, narcotics and similar violations it is well recognized that officers may employ appropriate artifice and deception to determine illicit activities. *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312

(1966); *United States v. Jobe,* 487 F.2d 268 (10th Cir. 1973), cert. denied, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). When a person is shown to be "ready and willing" to violate the law, providing an opportunity to do so by undercover agents or police is not entrapment. *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *United States v. Jobe, supra; United States v. Crawford,* 444 F.2d 1404 (10th Cir. 1971), cert. denied, 404 U.S. 855, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971); *Maestas v. United States,* 341 F.2d 493 (10th Cir. 1965).

■■■ Entrapment *as a matter of law* exists only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act complained of by the trickery, persuasion or fraud of a government agent. *Sorrells v. United States, supra; United States v. Hodges,* 480 F.2d 229 (10th Cir. 1973); *United States v. Gibson,* 446 F.2d 719 (10th Cir. 1971). If the evidence on the issue is conflicting, the issue of entrapment should be submitted to the jury. *Martinez v. United States, supra.*

Gurule relies upon *United States v. Bueno,* 447 F.2d 903 (5th Cir. 1971), cert. denied, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973)[4] for his contention that he was entitled to a dismissal as a matter of law in light of the Government's failure to come forward with evidence (i. e., the failure of the Government to produce Sawden at trial)[5] contradicting his testimony that Sawden had represented himself to be an agent, had solicited Gurule's help to "crack" a drug ring, and had provided the drugs for disbursement, which testimony,

---

4. *See also, United States v. West,* 511 F.2d 1083 (3rd Cir. 1975).

5. Based upon the following colloquy from the record, we find defendant's contention as to the alleged prejudice resulting from Sawden's absence at trial to be spurious:

   [Defense Counsel] I think I should state it was my process server who was attempting to serve Mr. Sawden before the [meeting with Sawden arranged by the Government prior to trial] . . . and then subsequent

to the meeting . . . *I didn't care if he was here at the trial or not.* (Emphasis added).
[The Court] It is your position . . . it was immaterial?
[Defense Counsel] Yes. (T.R.Supp., Vol. III, p. 7)
Having failed to exercise due diligence to secure the informer's presence, Gurule cannot now complain of his absence. *United States v. Johnson,* 495 F.2d 242 (10th Cir. 1974).

**24**

standing uncontradicted, clearly evidenced entrapment.

■ The per se rule seemingly established in *Bueno*—and urged by appellant here—requiring a finding of entrapment when the Government fails to produce the informant-agent to rebut the defendant's testimony as to entrapment has recently come under attack. *See,* Judge Weis' dissent in *United States v. West, supra; United States v. Jett,* 491 F.2d 1078 (1st Cir. 1974); *United States v. Hayes, supra.* In *United States v. Johnson, supra,* we held that even absent the rebutting testimony of the Government's informant, the jury is entitled to disbelieve the uncontradicted portions of testimony of a defendant alleging entrapment. *See also, Masciale v. United States,* 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958). We fail to see any reason why the jury should be accorded less discretion to disbelieve the defendant's uncorroborated testimony that he was supplied narcotics by the informant. *But see contra, Bueno, supra.*[6]

Our review of the record indicates that the defense of entrapment was not unmistakably established merely by virtue of Gurule's testimony and, in light of certain conflicting evidence discussed *infra,* the issue was properly submitted to the jury. Furthermore, the jury, having disbelieved Gurule's testimony—as evidenced by the verdict—had before them sufficient substantial evidence, in our judgment, to find beyond a reasonable doubt that Gurule was "ready and willing" to commit the offense charged and had not been supplied narcotics by the Government's informant.

In this regard, we deem the following significant: (a) while Gurule testified that he was in continuous contact with Sawden who directed these series of transactions, Agent Phillips testified that he had instructed Sawden to disassociate himself from the case after the initial introduction and further that on several occasions thereafter Gurule had questioned Phillips as to Sawden's whereabouts; (b)while Gurule testified that Sawden was his source of supply of narcotics, there was evidence admitted that prior to going to the Airport on January 13, 1974, Gurule had made a stop at the Ranch Room Inn, from which fact the jury might reasonably have inferred—in connection with the later testimony as to Penrod's involvement—that a meeting between "source" and "dealer" had occurred; that at the Airport on the evening of January 13, 1974, Gurule informed Agents Phillips and Koller that his "source" wanted to look them over prior to consummating the sale—an inexplicable request if Sawden were in fact the "source"; and that eyewitnesses had observed Penrod, on the evening of January 13, 1974, deposit a bag outside the Ranch Room Inn shortly before Gurule picked up a bag containing narcotics in that vicinity—indicating Penrod, not Sawden, was Gurule's "source"; and (c) while Gurule testified that he had had no previous drug dealings and was, hence, not "predisposed" to commit the offense, Agent Phillips testified that Sawden had reputed Gurule to be a dealer,[7] that Gurule was apparently familiar with the process of "cutting" narcotics, and that Gurule was ready and willing to participate in negotiations and sales following the initial introduction. Assuming that the jury disbelieved Gurule's testimony as to his innocent participation, as they had a right to do, we have held that such evidence is sufficient to demonstrate "predisposition". *United States v. Johnson, supra; United States v. Hill,* 469 F.2d 673 (10th Cir. 1972), cert. denied, 410 U.S. 939, 93 S.Ct. 1400,

---

**6.** In *United States v. Soto,* 504 F.2d 557 (5th Cir. 1974) and *United States v. Workopich,* 479 F.2d 1142, 1146 (5th Cir. 1973), the court adopted the rule that "when the undisputed testimony of a defendant is the sole basis for an entrapment defense, entrapment is not established as a matter of law but rather is an issue for the jury to decide." The Court's attempt to rationalize *Bueno* to this holding is, however, somewhat questionable. *See,* Weis' dissent in *United States v. West,* at footnote 3, *supra.*

**7.** Hearsay, by defendant's own admission, is admissible to show "predisposition".

35 L.Ed.2d 604 (1973); *United States v. Crawford, supra.*

Evidence, both direct and circumstantial, together with the reasonable inferences drawn therefrom in the light most favorable to the Government may be considered in view of the jury's verdict. *United States v. Abbadessa,* 470 F.2d 1333 (10th Cir. 1972); *United States v. Yates,* 470 F.2d 968 (10th Cir. 1972).

A finding of entrapment in this case required a factual determination by the jury based on the weight of the evidence and the assessment of credibility of witnesses. These are exclusive functions of the jury and not those of the appellate court. *United States v. Gibson, supra; United States v. Weiss,* 431 F.2d 1402 (10th Cir. 1970); *Lucas v. United States,* 355 F.2d 245 (10th Cir. 1966), cert. denied, 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687 (1966).

■ We hold that the question of entrapment was one of fact for determination by the jury based on conflicting evidence, involving the issue of credibility; that it was properly submitted to the jury; and that the jury finding against Gurule is supported by the record. Furthermore, after a careful review of the entire record before us we hold that Gurule's uncorroborated testimony does not constitute sufficient proof of "outrageous" conduct on the part of the Government's agents.

## II.

Gurule asserts that he was prejudiced as a result of the Trial Court's instruction on entrapment which, he alleges, failed to inform the jury of the burden placed upon the Government once the defense is raised.

■ Preliminarily, we agree with Gurule's assertion, relying upon *United States v. Spivey,* 508 F.2d 146 (10th Cir. 1975), cert. denied, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104, i. e., that once the defense is raised the Government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped, and that the jury should be informed that the Government must meet this burden. *Garcia v. United States,* 373 F.2d 806 (10th Cir. 1967).

After defining entrapment, the Trial Court instructed:

If then the jury should find *beyond a reasonable doubt* from the evidence in the case that before anything at all occurred respecting the alleged offense in this case, the defendant Gurule was ready and willing to commit the crimes as charged in the indictment whenever opportunity was afforded and the government officers or their agents did no more than offer the opportunity, then the defendant is not a victim of entrapment.

If on the other hand, if the evidence in this case should leave you *with a reasonable doubt* whether the defendant had the previous intent or purpose to commit any offense of the character here charged and did so only because he was induced or persuaded by some officer or agent, then it is your duty to acquit him. (Emphasis supplied). [T.R.Supp., Vol. I, pp. 6–7].

Although the language may possibly have been improved upon, we hold it was clearly implicit in this instruction that the burden of proof was placed upon the Government. The disputed instruction, not objected to at the time it was submitted to the jury, was not erroneous when viewed in light of the entire charge and did not mislead the jury.[8] *United States v. Wheeler,* 444 F.2d 385 (10th Cir. 1971); *Devine v. United States,* 403 F.2d 93 (10th Cir. 1968), cert. denied, 394 U.S. 1003, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969). We hold there was no prejudice to the appellant.

We have carefully considered appellant's other contentions of error and find them to be without merit.

Affirmed.

8. Substantially the same instruction was approved in *United States v. Haley,* 452 F.2d 398 (8th Cir. 1971), cert. denied, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972).